IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DIAUNTE SHIELDS,

                Petitioner,                               OPINION AND ORDER

      v.                                                         11-cv-327-wmc

UNITED STATES OF AMERICA,

                Respondent.

---

Diaunte Shields has been both an active "combatant," as well as casualty, of our nation's forty-year "War on Drugs."[1] In Shields' case, he has neither killed nor been killed, nor for that matter engaged in any violent crime, but he is currently in year eight of a 24-year sentence, largely because of now generally discredited, disproportionately high sentencing guidelines for the distribution of so-called "crack" cocaine, which has contributed to a staggeringly large number of young men, and on a percentage basis particularly black men like Shields, being locked up for very long prison sentences, even further enhanced in Shield's case by his being denominated a "career offender" by virtue of two earlier convictions for the manufacture of crack cocaine.

Since petitioner Shields' conviction for drug-trafficking in *United States v. Shields*, 07-cr-7-jcs (W.D. Wis.), and sentence as a career criminal to 290 months on July 25,

---

[1] Although government efforts to control the spread of illicit drugs date back well before 1971, the media coined the phrase "war on drugs" in June of that year. *See* Michael B. Cassidy, *Examining Crack Cocaine Sentencing in a Post-Kimbrough World*, 42 Akron L. R. 105, 108 (2009) (quoting PBS Frontline, *Drug Wars: Thirty Years of America's Drug War*, http://www.pbs.org/wgbh/pages/frontline/shows/drugs/cron/ (last visited June 1, 2008)). Shortly thereafter, President Nixon proclaimed drug abuse "America's public enemy number one." *Id*.

2007, Congress has addressed the severity of the disparity in crack cocaine sentences in two separate pieces of legislation. Were Shields sentenced today to the mid-range of the federal sentencing guidelines (as he was in 2007), he would be serving a sentence reduced by approximately 5 years even as a career offender and approximately 10 years were he not deemed a career offender. Moreover, Shields would have been released three years ago if all of his offenses involved powder cocaine. Instead, principally because of now acknowledged, ill-advised law and worse timing, Shields faces another 17 years behind bars before being eligible for supervised release.[2]

Presently before this court is Shields motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, asserting that he was denied effective assistance

---

[2] Daunte Shields was by no means an upstanding citizen when he came to the attention of the FBI in 2006, though it is unlikely that Shields appreciated the full impact of picking up a federal conviction for distribution of crack or, if the most reliable human behavioral research is any indication, unlikely that the additional deterrents to known state penalties would have had an impact if he had. Shields first conviction was at the age of 14 in Cook County Circuit Court, Illinois, for unlawful use of a weapon, ammunition and two counts of possession of a firearm, followed by a misdemeanor and felony counts for possession of controlled substances in Cook County, and culminating in two separate convictions for conspiracy to manufacture and deliver cocaine in La Crosse County Circuit Court, Wisconsin, at age 20 and 23. At the time of his federal conviction, Shields was 27 and had also fathered seven children, all but one as a result of an "on again, off again" relationship with a single woman and the other from a previous relationship. On the other hand, Shields is also not the same man he was when originally sentenced by Judge Shabaz on July 25, 2007. Though sadly of no legal relevance, Shields documents his ongoing efforts since being incarcerated to turn his life around, including earning his GED, certification as a journeyman electronics technician, commercial driver's license, and completion of college courses in financial management, public speaking and communications. (Case No. 07-cr-07, Dkt. #35.) This is also reason to hope that both his age, maturity and obvious intelligence may coalesce to keep him from returning to drug use and crime. *See* Ashley Nellis, *Throwing Away the Key: The Expansion of Life Without Parole Sentences in the United States*, 23 FED. SENT'G REP. 27, 28 (2010) ("Lifers" have lower rates of recidivism on release because of "the duration of their imprisonment, the maturity they are likely to gain in prison, and their age upon reentry into the community.").

of counsel at his sentencing. Because Shields fails to establish that his counsel's performance was in any way deficient or that he is otherwise entitled to relief, this court is obligated to deny his motion under current law, although his plight cannot be. Perhaps the Seventh Circuit, the Supreme Court, Congress, the United States Attorney General or the President will yet hear and address it.[3]

BACKGROUND

On January 24, 2007, a federal grand jury in this district returned a one-count indictment against Shields, charging him with possession with intent to deliver 50 grams or more of cocaine base ("crack cocaine"), a Schedule II Controlled Substance, a Class A felony, in violation of 21 U.S.C. § 841(a)(1). Shields entered a plea of guilty on May 11, 2007. There was no written plea agreement.

Because the defendant's conduct occurred in September 2006, the November 2005 federal sentencing manual was used in calculating the advisory guideline range.[4] The

---

[3] Other than revisiting the decision not to apply *Corner* retroactively, Shields's best hope in this regard may be a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the U.S. District Court where he is currently being housed by the Bureau of Prisons, challenging his imprisonment under the classification as a career offender, pursuant to the opinion set out in *Narvaez v. United States*, 671 F.3d 621 (7th Cir. 2011). If the "Smarter Sentencing Act" passes, this court may also be able to reconsider the sentence originally imposed.

[4] This was consistent with the Seventh Circuit's decision in *United States v. Demaree*, 459 F.3d 791 (7th Cir. Aug. 11, 2006), which was controlling at the time of Shields' sentencing. Like much of the other rules for sentencing of someone in Shields' position, this decision has since been reversed. In *Peugh v. United States*, — U.S. —, 133 S. Ct. 2072 (2013), the Supreme Court directed sentencing courts to review the guidelines manual in effect at the time of sentencing, as well as the guideline manual in effect on the date the offense of conviction was committed to avoid potential violations of the *ex post facto* clause found in Article 1, § 9 of the United States Constitution.

investigative materials gathered by the probation office reflected Shields' relevant conduct involved 129.99 grams of crack cocaine. According to § 2D1.1(c)(4), the base offense level was 32, because the quantity of the crack cocaine fell between 50 grams but less than 150 grams. No other Chapter Two adjustments applied. Because of the amount of crack cocaine involved, the charged offense carried a possible penalty of life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(iii).

Because Shields had at least two prior felony convictions for manufacture of crack cocaine, he was also subject to an enhanced sentence as a "career offender" under § 4B1.1(a) of the guidelines. With life as the then statutory maximum sentence, the career-offender guideline increased Shields' offense level score to 37. U.S.S.G. § 4B1.1(b)(A) (November 2005). Even with a three-level reduction for acceptance of responsibility, this meant Shields' total offense level score was 34 pursuant to § 3E1.1(a)-(b). Because Shields' criminal record placed him in the highest Criminal History Category available (Category VI), the probation office calculated an advisory sentence range of 262 to 327 months in prison under the guidelines. Neither side filed objections to the probation office's presentence report, nor does there appear any basis to have done so at that time.

At the sentencing hearing on July 25, 2007, Shields' counsel, Assistant Federal Public Defender Michael Lieberman, acknowledged that the advisory guideline range was "accurately calculated," but asked the court to consider mitigating circumstances concerning Shields' disadvantaged upbringing. (Sentencing Trans. at 18-19.) Noting

that Shields lived in "difficult neighborhoods" and lacked a positive role model due to his own mother's history of drug abuse and only occasional contact with his father, defense counsel argued that "a sentence closer to 180 months" was appropriate. *Id.* at 19. In sentencing Shields, Judge Shabaz recognized that the defendant "had little family support while growing up," and became "involved in selling controlled substances to help support his [own] seven children." *Id.* at 20. Pointing to Shields' lengthy criminal record at age 27, which included the illegal purchase and sale of firearms as well as crack cocaine, Judge Shabaz declined to sentence below the guidelines, but chose the middle of the advisory guideline range, ultimately sentencing Shields to serve 290 months in prison to be served consecutively to the time imposed in state court for violating the terms of his parole, followed by a five-year term of supervised release. *Id.* at 20-22.[5]

On direct appeal, Shields argued that the district court failed to consider whether his punishment as a career offender was greater than necessary in light of the disparate sentencing ratio (100:1) between crack and powder-cocaine offenses at that time. Shields relied principally upon *Kimbrough v. United States*, 552 U.S. 85 (2007), which held that district courts had the discretion to consider whether the disparate sentencing ratio (100:1) between crack and powder-cocaine offenses warranted a lower sentence. The holding in *Kimbrough* was reaffirmed by the Supreme Court in 2009. *Spears v. United States*, 555 U.S. 261, 265-66 (2009) ("[D]istrict courts are entitled to reject and vary

---

[5] Having served for more than four years and reviewed hundreds of Judge Shabaz's sentences now assigned to me because of collateral challenges or subject to revocation proceedings from supervised release, I can confidently state that any sentence below the high end of the guideline range constituted a meaningful reduction, especially when the amount of drugs approached the

categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines.").

Unfortunately for Shields' and others like him, however, the Supreme Court did not decide *Kimbrough* until several months after Shields' sentence was imposed. Before *Kimbrough*, Seventh Circuit precedent essentially precluded judges from questioning the 100:1 crack-to-powder ratio or modifying a sentence based on a disagreement with the policy behind that difference. *See United States v. Jointer*, 457 F.3d 682, 686-88 (7th Cir. 2006). Because of the change brought about by *Kimbrough*, the Seventh Circuit later issued *United States v. Taylor*, 520 F.3d 746 (7th Cir. 2008), which held that a limited remand was appropriate in certain cases affected by the crack/powder ratio so that the district court could indicate whether it would have imposed a lower sentence if it had the discretion to do so. *Id*. at 747.

The following year, the Supreme Court went further in *Spears v. United States*, 555 U.S. 261 (2009), holding that district courts have the authority to vary from the crack cocaine guidelines based on policy disagreements with them, rather than because they yield an excessive sentence based on an individual determination in a particular case. In considering whether Shields was entitled to a limited remand under *Taylor*, however, the Seventh Circuit observed that he "did not ask the district court to impose a below-range sentence on the basis of a perceived disparity in the career offender imprisonment ranges for purveyors of crack and powder [cocaine]." *United States v. Shields*, No. 07-2793 (7th

---

top of the applicable guideline range as here.

Cir. Feb. 24, 2010) (unpublished). The Seventh Circuit held, therefore, that the district court could not be faulted for failing to anticipate this argument and that Shields would not benefit in any event assuming that the plain-error standard of review applied. *Id.* Accordingly, the Seventh Circuit affirmed Shields' conviction and sentence.

Less than one month later, on March 17, 2010, the Seventh Circuit sitting *en banc* extended its earlier holding in *Taylor* to cases in which a crack/powder sentencing disparity might have occurred under the career-offender guideline, U.S.S.G. § 4B1.1, based on the type of cocaine involved. *See United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010) (holding that district courts had discretion to disagree with the career-offender guideline in cases involving crack cocaine). *Corner* did not address the possible retroactive application of that decision. Shields then pursued certiorari review with the United States Supreme Court, again arguing that he was entitled to remand for reconsideration of his sentence in light of the changes in precedent after *Kimbrough*. The Supreme Court summarily denied that petition on June 21, 2010. *See Shields v. United States*, 130 S. Ct. 3487 (2010).

Just two months after that denial, President Obama signed the Fair Sentencing Act ("FSA"), Pub. L. 111-220, 124 Stat. 2372 (2010), which increased the quantities of crack cocaine that trigger the five and ten-year statutory mandatory minimum penalties (from five grams to 28 grams for five-year mandatory minimums and from 50 grams to 280 grams for ten-year mandatory minimums).[6] Among other things, the FSA also eliminated

---

[6] Amendments 750 and 759 to the federal sentencing guidelines took effect on November 1, 2011, and permanently implement parts of the FSA in the guidelines. Amendment 759 added

7

the five-year mandatory minimum or simple possession of crack cocaine.

In *United States v. Griffin*, 652 F.3d 793 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1124 (2012), the Seventh Circuit held that only defendants sentenced based on a sentencing range subsequently lowered by the U.S. Sentencing Commission pursuant to 18 U.S.C. § 3582(c)(2) are eligible for a reduction in sentence under that provision. *Griffin*, 652 F.3d at 803. Believing he met this test, Shields filed a *pro se* motion on February 17, 2012, seeking a reduction of sentence in light of the guideline changes adopted to bring crack guideline ranges closer in line to powder cocaine. (Dkt. #35.) The government opposed the motion, arguing that he was sentenced based on his status as a career offender, not on reductions made pursuant to 18 U.S.C. § 3582(c) and was, therefore, ineligible for relief under the retroactive changes to the cocaine base sentencing guidelines. In that motion, defendant did not argue for, and the government did not address, the possible retroactive application of *Corner*. This court denied Shields' § 3582(c)(2) motion on April 29, 2013.

On May 9, 2011, Shields also sought collateral relief from his conviction and sentence under 28 U.S.C. § 2255, which is the subject of his petition in this case.

OPINION

Shields argues that he was denied effective assistance of counsel at sentencing

---

Parts A and C of Amendment 750 to § 1B1.10, which provides instructions to the court in addressing motions under 18 U.S.C. § 3582(c)(2). Part A contained changes to the crack quantity levels in the Drug Quantity Table in § 2D1.1. Part C deleted the cross reference in § 2D2.1 to reflect the elimination of the statutory minimum for simple possession of crack cocaine.

because his attorney did not object to the disparate sentencing ratio for crack/powder cocaine cases or argue that the district court should consider a lower sentence because of it. Arguing further that he is entitled to benefit from the Seventh Circuit's post-*Kimbrough* precedents, Shields asks this court to re-sentence him based on a retroactive application of *United States v. Corner*, 598 F.3d 411 (7th Cir. 2010).

A motion for relief under 28 U.S.C. § 2255 invokes "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 520 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). To obtain relief under § 2255, a prisoner must show that the district court sentenced him "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack." 28 U.S.C. § 2255. In other words, relief under § 2255 is appropriate only where a defendant establishes "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

## I. Ineffective Assistance of Counsel

To establish a violation of the right to effective assistance of counsel guaranteed by

9

the Sixth Amendment to the United States Constitution, a defendant must prove that: (1) counsel's performance was so deficient that it fell "below an objective standard of reasonableness"; and (2) counsel's poor performance resulted in actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011) (relief is available under § 2255 only when counsel's performance "was objectively deficient, -- in other words, that it fell outside the wide range of competent representation -- and that [he] was prejudiced by the subpar representation"). On collateral review, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

As outlined above, Shields contends that his counsel at sentencing should have argued that the range of imprisonment was too harsh based on the disparity between crack and powder cocaine sentences. Shields reports that he asked his defense counsel to make this argument, but Lieberman "refused," explaining that it was foreclosed by Seventh Circuit precedent. (Dkt. # 1, *Motion Under 28 U.S.C. § 2255*, at 3). At the time of Shields' sentencing, this was an accurate statement of the law. *See Jointer*, 457 F.3d at 686-88. Assistant Federal Defender Lieberman explained further that raising a meritless objection could anger the sentencing judge. (Dkt. # 1, *Motion Under 28 U.S.C. § 2255*,

10

at 3). Shields accepted this explanation at the time, or at least never brought it up again, though he did refuse to sign any plea agreement and was sentenced without one. Instead of pursuing the argument proposed by Shields, Lieberman chose instead to present a number of mitigating factors in hopes of reducing Shields' potential prison sentence. *See Sentencing Trans*. at 18-20.

Assuming that Shields' allegations are all true, and there is no reason to doubt them, he does not describe the type of substandard lawyering that contravenes prevailing professional norms. *See, e.g., Fuller v. United States*, 398 F.3d 644, 652 (2005) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis . . . for doing so that is not frivolous.") (quoting Model Rules Of Prof'l Conduct R. 3.1.); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). In that respect, a defense attorney has "no duty to make a frivolous argument; and there is a tactical reason not to make weak arguments (and *a fortiori* frivolous ones, *Evans v. Meyer*, 742 F.2d 371, 374 (7th Cir. 1984)), "which may" distract the court from the strong arguments and as a result make it less likely to rule in the defendant's favor." *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003).

Considering defense counsel was able to lobby successfully for a sentence in the middle of the advisory guideline range, Shields does not overcome the presumption that the challenged action could be considered sound trial strategy under the circumstances. *See Strickland*, 466 U.S. at 689; *see also Li v. United States*, 648 F.3d 524, 528 (7th Cir.

2011) (citations omitted) ("So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision cannot support a claim of ineffective assistance of counsel."). Of course, this is different from saying that counsel's judgment not to preserve the argument by a simple written objection to the presentence report could not be second guessed even at the time, just that it was not "objectively deficient." With the benefit of hindsight, this call had a devastating impact on Shields' right to post-conviction relief, but counsel's actions are not and should not be judged with hindsight.

Noting that district courts are now free to disagree with the disparity in the guideline range for those charged as career offenders in § 4B1.1, by virtue of the Seventh Circuit's *en banc* decision in *Corner*, 598 F.3d at 416, Shields also argues that his attorney should have preserved an argument based on the disparate crack/powder-cocaine ratio in anticipation of a change in the law. This, too, is a non-starter under current law. *See Bonds v. United States*, 441 F. App'x 386, 389 (7th Cir. 2011) (refusing to find fault with counsel who did not request a lower sentence based on the disparity between crack and powder cocaine offenses); *see also Knox v. United States*, 400 F.3d 519, 522 (7th Cir. 2005) (holding that defense counsel's failure to anticipate *Apprendi* was not deficient or ineffective); *Rezin*, 322 F.3d at 446-47 (commenting that "counsel is not ineffective for failing to anticipate a novel argument, even if a more clever lawyer might have spotted it on the horizon").

Even assuming that Shields could establish deficient performance, he does not

12

prove any prejudice as the result of his counsel's failure to request a reduced sentence based on the disparity between crack and powder cocaine offenses. To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of sentencing, a defendant must specifically demonstrate a reasonable probability that he would have received less time in prison but for counsel's errors. *See Glover v. United States*, 531 U.S. 198, 203 (2001). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Here, the sentencing court noted that Shields faced a lengthy term of imprisonment under the advisory guideline range because of his status as a career offender. Shields does not dispute that his substantial criminal record of serious drug offenses was the overriding factor in determining the length of his sentence, and not necessarily the quantity or type of the cocaine involved in the transaction at issue. While the sentencing court was obviously swayed by the mitigating factors mentioned by defense counsel, there is no indication in the record that the sentencing court would have reduced Shields' sentence further if the disparate ratio between crack and powder cocaine offenses had been challenged. On the contrary, the record indicates that it was defendant's career-offender status that drove his sentence, not the guideline range for crack cocaine. *See* U.S.S.G. § 4B1.1(b)(A). Under these circumstances, Shields fails to demonstrate that, but for his counsel's failure to request an even lower sentence, he would

have received a more favorable term of imprisonment. It follows that Shields does not establish deficient performance or actual prejudice. Accordingly, his motion based on ineffective assistance of counsel must be denied.

## II. Retroactivity

Apart from his defense attorney's performance, Shields contends that he is entitled to be re-sentenced under Seventh Circuit precedent issued after *Kimbrough*. In particular, Shields points to the previously-discussed, Seventh Circuit decision in *United States v. Corner*, 598 F.3d 411 (7th Cir. 2010), which held that a sentencing court could disagree with or deviate from the career-offender guideline on policy grounds, including those related to the crack/powder cocaine disparity. *Id*. at 415-16. Unfortunately, this argument fairs no better than Shields' ineffective assistance argument.

First, the Sentencing Commission approved a retroactive amendment (Amendment 750) to the drug quantity table for crack-cocaine offenses found at U.S.S.G. § 2D1.1. A sentencing court is authorized, therefore, only to give effect to a retroactive amendment of a defendant's term of imprisonment under 18 U.S.C. § 3582(c). This court already denied Shields' motion to modify his term of imprisonment pursuant to § 3582(c), because his sentence was determined under the career-offender guideline, *see* U.S.S.G. § 4B1.1(a), and not under the guideline or drug quantity table applicable to crack cocaine. *See United States v. Shields*, 11-cr-7 (W.D. Wis. (Dkt. # 37) April 29, 2013). As a result, Shields is not entitled to benefit from this retroactive change. *See Griffin*, 652 F.3d at

803.

Second, the *Corner* decision that Shields relies upon does not qualify for retroactive application on collateral review. For better or worse (and for Shields, it is unquestionably the latter), black-letter law dictates that whenever the United States Supreme Court issues a "new rule," it applies to all criminal cases still pending on direct review. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). Under the principles established in *Teague v. Lane*, 489 U.S. 288 (1989), a new rule is applicable retroactively to cases that are already final if the new rule is (1) "substantive," such that it narrows the application or scope of a criminal statute, *Bousley v. United States*, 523 U.S. 614, 620-21 (1998); or (2) a "watershed" rule of criminal procedure, which is an extremely narrow category implicating "the fundamental fairness and accuracy of the criminal proceeding." *Schriro*, 542 U.S. at 352 (quoting *Teague v. Lane*, 489 U.S. 288, 311 (1989)); *see also Saffle v. Parks*, 494 U.S. 484, 494-95 (1990).

The decision in *Corner* expressly relies on *Kimbrough* and *Booker* for the proposition that sentencing courts are free to disagree with the Sentencing Guidelines, which, unlike statutes, are merely advisory and "not legally binding." *Corner*, 598 F.3d at 416. Even assuming that *Corner* articulates a "new rule," it is still neither a substantive rule nor a procedural rule of "watershed" significance. *See McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) (holding that *Booker* is not retroactive to cases on collateral review). Therefore, Shields does not show that he is entitled to relief from his sentence pursuant to principles of retroactivity. Absent a valid basis for relief, Shields' motion


under § 2255 must be denied.[7]

## VI. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the court must issue or deny a certificate of appealability when entering a final order adverse to the applicant. A certificate of appealability will not issue unless the applicant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

---

[7] This is not to say Shields' case lacks for arguments as to the inequity of maintaining his sentence over others. Another criminal matter in this court is illustrated here. On May 11, 2006, Raymond Ryals was indicted in this court more than six months before Shields of distribution of crack cocaine in Case No. 06-cr-99. He was convicted by a jury on October 11, 2006, sentenced by Judge Shabaz as a "career offender" to 365 months in prison on December 19, 2006, again more than six months before Shields. On January 10, 2008, however, Ryals' sentence vacated and remanded for resentencing after the Seventh Circuit found that the district court abused its discretion in denying defendant's motion for new counsel at sentencing. *United States v. Ryals*, 512 F.3d 416 (7th Cir. 2008). This made all the difference. On May 14, 2008, Judge Crabb re-sentenced Ryals to 300 months in prison under then prevailing case law, a sentence affirmed in *United States v. Ryals*, 351 F. App'x 102, 2009 WL 3634333 (7th Cir. 2009), which noted that the district court had no authority to sentence the defendant to less time based on its policy disagreement with the crack/powder disparity because Ryals was relying on *United States v. Welton*, 583 F.3d 494, 496-97 (7th Cir. 2009). After *Corner* overruled *Welton,* however, Ryals petitioned the Supreme Court for resentencing. On June 21, 2010, the United States Supreme Court vacated this court's amended sentence and once again remanded the case for reconsideration. *See Ryals v. United States*, 130 S. Ct. 3461 (2010). On May 11, 2011, Judge Crabb re-sentenced Ryals to 280 months in prison and an 8-year term of SR. Ryals then appealed, arguing that the district court erred in resentencing him by not observing that the Fair Sentencing Act lowered his mandatory minimum term of supervised release. On February 11, 2013, the Seventh Circuit vacated Ryals' sentence a third time and remanded, noting that the district court may reexamine the term of imprisonment as well under the FSA. *See United States v. Ryals*, 503 F. App'x 478, 2013 WL 494360 (7th Cir. 2013). On April 26, 2013, Ryals was re-sentenced by Judge Crabb to 132 months in prison.

wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires an applicant to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the applicant must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although Rule 11 allows the court to direct the parties to submit arguments on the possible issuance of a certificate of appealability, it is unnecessary to do so in this instance. For reasons outlined above, the court concludes that no reasonable jurist would debate whether a different result was required under the current states of the law. For reasons explained at the outset of this opinion, however, the court will issue a certificate of appealability in the hopes that greater discretion or minds to alter current law in the court of appeals or the United States Supreme Court might still afford Shields relief in light of *Corner* and the Fair Sentencing Act.

ORDER

IT IS ORDERED that:

(1) Diaunte Shields' motion to vacate, set aside or correct his sentence under

28 U.S.C. § 2255 is DENIED.

(2) A certificate of appealability is GRANTED.

Entered this 22nd day of April, 2014.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge